[Cite as *State v. Culbreth*, 2019-Ohio-138.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 18CA8 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| STEVEN RAY CULBRETH, | : | |
| Defendant-Appellant. | : | RELEASED 01/09/2019 |

<u>APPEARANCES</u>:

Eric J. Allen, The Law Office of Eric J. Allen, Ltd., Gahanna, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, Hillsboro, Ohio, for appellee.

Hoover, J.

{¶1}    Following trial, a jury found Steven R. Culbreth ("Culbreth") guilty of burglary; and the Highland County Court of Common Pleas convicted him upon the jury verdict. The trial court sentenced Culbreth to a five-year prison term with a three-year mandatory term of post-release control.

{¶2}    On appeal, Culbreth asserts that the trial court erred in using a dismissed domestic-violence charge as a factor in sentencing him to prison. However, the trial court noted that it did not credit the dismissed charge; instead, it emphasized that the charge was dismissed and did not result in a criminal conviction. The court merely cited it with his convictions and his threats made in this case as evidence of some history of violence, temper, and threatening behavior. We have consistently held that evidence of other crimes, including crimes that do not result in formal criminal charges, or criminal charges that are dismissed as part of a plea bargain,

may be considered at sentencing. The evidence at sentencing included the presentence investigation report, which the trial court considered, but is not included in the record on appeal. Because Culbreth failed to supplement the record on appeal with the report, we must presume that it included evidence of his history of violence, temper, and threatening behavior. Finally, the record includes the evidence introduced during the jury trial, which includes evidence of Culbreth's history of violence, temper, and threatening behavior. We reject Culbreth's first assignment of error.

{¶3}   Culbreth next contends that the record does not support his five-year prison sentence. He argues that his two prior convictions were not related to burglary and were tied to his history of alcohol abuse. He also contends that it has been six years since those prior convictions. Therefore, his recidivism risk was much lower than the average defendant convicted of burglary. But, the trial court emphasized Culbreth's lack of genuine remorse and his express intent of his home invasion to threaten to commit violence as evidence supporting more than the minimum two-year prison sentence. Culbreth fails to establish by the requisite clear and convincing evidence that his sentence is either contrary to law or not supported by the record. We overrule Culbreth's second assignment of error.

{¶4}   Having overruled both assignments of error, we affirm Culbreth's sentence.

### I. Facts and Procedural Background

{¶5}   In November 2017, a Highland County Grand Jury indicted Culbreth with one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree, and one count of menacing in violation of R.C. 2903.22, a misdemeanor of the fourth degree. Culbreth entered a plea of not guilty to the charges; and the case proceeded to a jury trial.

{¶6}    Kathryn Parry testified that she has lived at her home in Mount Orab, Highland County, Ohio, since 2016, and that Culbreth was her ex-boyfriend, who had lived in that home with her until their break-up in April 2017. Their relationship had been marked by violence, including Culbreth harming her and breaking a chain lock off the front door when he was mad. When they broke up, Kathryn asked Culbreth to give her back the keys to the home; and he gave her what she thought was the only set of keys to the home he had.

{¶7}    After the break-up, Kathryn married David Parry and he lived with her and her two sons at the Mount Orab home. On the morning of October 16, 2017, after her husband had left for work, Kathryn received a call from Culbreth complaining about her calling his boss. Culbreth threatened to kill her and her husband and stated that he was coming over to kick David's ass. He then proceeded to send her several text messages, threatening to harm her husband. Culbreth then drove to Kathryn's home and texted her that he was on the road the house was on and urged her to tell her husband to "[g]et his ass to the road." When she saw Culbreth's car parked at the end of the driveway and him standing outside of it with his arms crossed, she shut the front door and locked it and called her husband and then called 911. She believed that Culbreth was going to harm her.

{¶8}    When Kathryn then heard the front door opening, she ran out sliding doors through the back yard, eventually stopping a passing motorist, who called 911 and drove her to a store away from the home. Sandra Chase, the driver of the vehicle who picked Kathryn up when she fled her home, corroborated Kathryn's account and further testified that Kathryn was "hysterical, screaming, crying" and "had tears down her face" when she picked her up and that they observed Culbreth look in his car before he went towards the home. She received a text shortly thereafter from Culbreth stating that he could not believe that she had changed the toilets

in the home that he had installed when he lived with her, indicating that he had been inside her home.

{¶9} Sgt. Dan Croy of the Highland County Sheriff's Office testified that on that morning, he received a dispatch about the situation and met Kathryn at the store to which she had been diverted. When he arrived at the home, he noticed that the screen door was ajar and the front door was open. He returned Kathryn to her home and met her husband there. When her cell phone rang with Culbreth calling her, her husband answered it on speakerphone upon Sgt. Croy's direction; and Culbreth threatened to beat him up. Then, upon Sgt. Croy's instructions, David told Culbreth to come back to their home and "get some." Culbreth then drove back to Kathryn's home at a high rate of speed, and Sgt. Croy arrested him. David corroborated his wife's and Sgt. Croy's testimony and testified that he was never scared of Culbreth's threats.

{¶10} When Sgt. Croy questioned him, Culbreth first told him that he had not been at Kathryn's home earlier that day. Eventually, he admitted that he had knocked on the front door and then claimed that he had unlocked the front door to let the dog in, but never said that he had entered the home. Sgt. Croy also found a masonry hammer inside Culbreth's car.

{¶11} At the conclusion of the state's evidence, the court granted Culbreth's Crim.R. 29 motion for judgment of acquittal in part, dismissing the menacing charge because David Parry had testified that Culbreth's threats against him did not cause him to fear physical harm.

{¶12} Culbreth testified in his own defense, claiming that he had kept a set of keys to Kathryn's home after they broke up because it was with one of his vehicles. He admitted threatening Kathryn's husband in the texts on October 16, 2017, but denied threatening to kill or harm her. When Culbreth arrived at the home to beat up her husband, he honked his horn to get them to come out; but when they did not, he thought they were gone. According to Culbreth, he

then decided to go into their home because he was "curious" about whether they had kept all of the remodeling he had done to the home when he lived there with Kathryn. He testified that when he left the home, he locked the front door and he shut it. Culbreth further testified under oath that other than a traffic offense, he had never been convicted of a criminal offense.

{¶13} The jury returned a verdict finding Culbreth guilty of burglary as charged; and the trial court convicted him upon the guilty verdict and ordered a presentence investigation.

{¶14} At the sentencing hearing, the trial court first noted that it had reviewed a presentence investigation report, which is not included in the record on appeal. The state recommended that the court sentence Culbreth to a prison term because he entered Kathryn's home to cause either her and/or David harm, Kathryn had testified that he had an anger problem and had hurt her in the past, and his anger was reflected by his many threats on the day of the offense. Culbreth's counsel requested community control rather than a prison term. The justification for the request included: (1) recidivism was less likely given Culbreth's minimal criminal history; (2) the lack of any damage done to the home after Culbreth illegally entered it; and (3) his remorse for the burglary. Culbreth told the court that he was sorry for what he did, but then claimed he did not know Kathryn was in the house when he entered it.

{¶15} The trial court sentenced Culbreth to a term of five years in prison with a three-year mandatory term of post-release control. In both the sentencing hearing and its sentencing entry, the trial court noted that (1) Kathryn suffered serious psychological harm; (2) Culbreth's relationship with her facilitated the offense; and (3) Culbreth showed no genuine remorse for the burglary. At the sentencing hearing, the court additionally noted that Culbreth had a history of violence, that he entered the home to cause physical harm, and that the only reason he did not was because Kathryn and David were not home when he illegally invaded it:

This Court takes any home invasion seriously; but, when the express intent of the home invasion is the threat to commit violence, that ratchets it up even more. The only factors that I find in your favor is the fact that you weren't able to commit any physical violence against anyone, and that wasn't because of lack of trying, it was simply that she fled out the back door, and he wasn't there. And had he been there, there would have been a confrontation.

## II. Assignments of Error

{¶16}  Culbreth assigns the following errors for our review:

I. THE TRIAL COURT ERRED BY USING DISMISSED CHARGES AS AN INFLUENCING FACTOR IN SENTENCING.

II. THE RECORD DOES NOT SUPPORT THE NEED FOR A FIVE-YEAR PRISON SENTENCE.

## III. Standard of Review

{¶17}  In his assignments of error, Culbreth contests his sentence for burglary, a felony of the second degree. When reviewing felony sentences appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 22-23. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶18}   Although R.C. 2953.08(G)(2)(a) does not mention R.C. 2929.11 and 2929.12, the Supreme Court of Ohio has determined that the same standard of review applies to those statutes. *Marcum* at ¶ 23 (although "some sentences do not require the findings that R.C. 2953.08(G)[2][a] specifically addresses[,] * * * it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court"); *State v. Butcher*, 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, ¶ 84.

{¶19}   The defendant bears the burden of establishing by clear and convincing evidence that the sentence is either contrary to law or not supported by the record. *See, e.g., State v. Fisher*, 4th Dist. Jackson No. 17CA5, 2018-Ohio-2718, ¶ 20, citing *State v. O'Neill*, 3d Dist. Allen No. 1-09-27, 2009-Ohio-6156, fn. 1. Clear and convincing evidence is more than a mere "preponderance of the evidence," but allows less certainty than is required "beyond a reasonable doubt. It requires only "a firm belief or conviction as to the facts sought to be established. " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18.

### IV. Law and Analysis

### A.  The Trial Court Did Not Erroneously Consider a Dismissed Domestic-violence Charge in Sentencing.

{¶20}   In his first assignment of error Culbreth asserts that the trial court erred in using a dismissed domestic-violence charge against him in sentencing. He cites to the following emphasized portion of the trial court's discussion at the sentencing hearing:

> So, looking at the various factors: You do have some history of violence. – Well,
> let me back up. – In looking at your record, **your conviction for the mishandling**
> **of weapons while intoxicated, and disorderly conduct back on 9-20-12 in**

**Clermont County, when read in conjunction with the charge that was dismissed, which was domestic violence, you know, certainly suggests that you've had some problems in the past with your temperament, your temper, and threatening.** And the casual way in which you were throwing out threats on your text, about that you were coming there to take care of him, you know, and it's clear that violen[ce] is not something that's strange to you when it comes to dealing with personal situations, even though it hasn't resulted in any criminal convictions for that particularly. (Emphasis added.)

{¶21}  For the following reasons, we reject Culbreth's assertion. First, the premise of his assignment of error is incorrect. The trial court noted that it did not credit the dismissed charge; instead, it emphasized that the charge was dismissed and did not result in a criminal conviction. The court merely cited it with his convictions and his threats made in this case as evidence of some history of violence, temper, and threatening behavior.

{¶22}  Second, "courts, including this one, have consistently held that evidence of other crimes, including crimes that do not result in formal criminal charges, or criminal charges that are dismissed as a result of a plea bargain, may be considered at sentencing." *Fisher*, *supra*, at ¶ 23. The record of Culbreth's prior charges and criminal convictions were apparently contained in the presentence investigation report, but that report is not part of the record on appeal because Culbreth failed to request its inclusion. When the contents of a presentence investigation report are necessary to review the appropriateness of a sentence, an appellant must move to supplement the record on appeal with the report to permit our review; otherwise, we must presume the regularity of the sentence and affirm it. *See, e.g., State v. McGowan*, 9th Dist. Summit No. 27092, 2014-Ohio-2630, ¶ 6-7; *State v. Daniels*, 5th Dist. Muskingum Nos. CT2016-0021 and

CT2016-0022, 2017-Ohio-1045, ¶ 18. In fact, Culbreth lied under oath at trial and evidently to his counsel about even having any criminal convictions.

{¶23}   Third, the record includes the evidence introduced during the jury trial, which includes Culbreth's history of violence, temper, and threatening behavior. Kathryn testified that Culbreth had harmed her in the past and that he had been so mad one time that he broke the chain lock off the front door. He threatened to kill Kathryn and her husband on the day of the burglary, repeatedly threatened to beat up her husband, and was seen looking in his car where he kept a hammer when he committed the burglary.

{¶24}   Finally, the cases cited by Culbreth in support of his first assignment of error are distinguishable. In *State v. Blake*, 3d Dist. Union No. 14-03-33, 2004-Ohio-1952, the appellate court reversed a sentence because the trial court expressly stated its belief that the defendant had committed the offenses that the state dismissed as part of the plea agreement, no evidence was entered to support the trial court's conclusion that the defendant committed the dismissed offenses, and this was the court's sole basis for imposing the maximum sentence. Conversely, the trial court here did not expressly conclude that Culbreth committed the dismissed domestic-violence charge. The record does not include the presentence investigation report, which may have provided evidence that Culbreth had committed the domestic violence offense. In addition, the trial court did not use the dismissed charge as the sole basis for its sentencing; instead it relied on many sentencing factors. *See State v. Park*, 3d Dist. Crawford No. 3-06-14, 2007-Ohio-1084, ¶ 8 (same court that issued *Blake* distinguished it where trial court had many other reasons besides its belief that the defendant committed uncharged conduct to support its sentence).

{¶25}   Similarly, the other case that Culbreth cites, *State v. Fisher*, 11th Dist. Lake No. 2002-L-020, 2003-Ohio-3499, ¶ 25, is distinguishable because in that case, the trial court

"manufacture[d] extra evidence [relating to a higher dismissed charge] as a basis for a higher sentence." The record does not establish that the trial court made up evidence to support its sentence here.

{¶26}  We overrule Culbreth's first assignment of error.

## B.  Culbreth Did Not Establish that His Sentence is Clearly and Convincingly Contrary to Law or Not Supported by the Record.

{¶27}  In his second assignment of error, Culbreth contends that the record does not support his five-year prison sentence. He does not claim that his sentence is contrary to law. After review, it is clear that the sentence was not contrary to law because his sentence was within the statutory range; the trial court stated that it considered the factors in 2929.11 and 2929.12; and it was not obligated to make specific findings concerning these factors. *See State v. Douglas*, 4th Dist. Athens Nos. 17CA6 and 17CA8, 2018-Ohio-732, ¶ 42, citing *State v. Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486, ¶ 26-27; R.C. 2929.14(A)(2) ("For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years"). Culbreth's five-year prison sentence was more than the two-year minimum sentence, but less than the eight-year maximum sentence.

{¶28}  Therefore, Culbreth must establish by clear and convincing evidence that the record does not support his sentence. He argues that his two prior convictions were not related to burglary and were tied to his history of alcohol abuse. He also contends that it has been six years since those prior convictions; and his recidivism risk was much lower than the average defendant convicted of burglary. He claims that the record did not support his five-year prison term. But, the court could appropriately determine that his lack of genuine remorse at trial, including his incredible claim that he entered his ex-girlfriend's home only because he was curious about

whether she and her husband had kept his remodeling, coupled with his past evidence of violence, temper, and threatening behavior made his conviction for burglary serious enough to warrant more than the minimum prison sentence. As the trial court emphasized, home invasions where violence is threatened are particularly egregious; and it appeared that the only reason physical violence did not occur when Culbreth illegally entered his ex-girlfriend's home was the fortuitous occurrence that they had vacated the premises. Simply because the court did not balance or credit certain factors in the manner that Culbreth desires does not mean that the court failed to consider them, or that clear and convincing evidence shows that the court's findings are not supported by the record. *State v. Yost*, 4th Dist. Meigs No. 17CA10, 2018-Ohio-2719, ¶ 20; *State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 26.

{¶29} We overrule Culbreth's second assignment of error.

### V. Conclusion

{¶30} Culbreth has not established that the trial court erred in imposing a five-year prison sentence for his burglary conviction. Having overruled both of Culbreth's assignments of error, we affirm his sentence.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

   It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

   The Court finds there were reasonable grounds for this appeal.

   It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

   IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

   A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and McFarland, J.: Concur in Judgment and Opinion.


             For the Court


             By: _____
                Marie Hoover, Judge




**NOTICE TO COUNSEL**


   **Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**