[Cite as *State v. Conant*, 2020-Ohio-4319.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 20CA1108 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| ROBERT JAMES CONANT, | : | |
| Defendant-Appellant. | : | **RELEASED 8/27/2020** |

_____

<u>APPEARANCES</u>:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecutor, and Kris D. Blanton, Adams County Assistant Prosecutor, West Union, Ohio, for appellee.

_____

Hess, J.

{¶1}   Robert Conant appeals his conviction, following a jury trial, for felonious assault.  Conant contends that the trial court erred when it refused to instruct the jury on assault as a lesser included offense of felonious assault.  However, after viewing the evidence in a light most favorable to Conant, we conclude the jury could not reasonably find him not guilty of felonious assault but guilty of assault.  Therefore, the trial court did not abuse its discretion when it refused to give the requested instruction.

{¶2}   Conant also asserts his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.  However, after viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, and after weighing the evidence and all reasonable inferences,

considering the credibility of the witnesses after according the requisite deference to the jury's determinations, we conclude that in resolving evidentiary conflicts, the jury did not clearly lose its way or create a manifest miscarriage of justice so that we must reverse its verdict. Therefore, we reject Conant's argument.

{¶3} Next, Conant claims that he received ineffective assistance of counsel because trial counsel did not request dismissal or further questioning of a juror who felt Conant should have to testify and because counsel allowed improper testimony about his prior bad acts. However, the juror did not express a belief that conflicted with Conant's Fifth Amendment right against self-incrimination, and the complained of testimony did not violate Evid.R. 404(B). Therefore, counsel's performance regarding those matters was not deficient.

{¶4} Conant also contends that the trial court erred when it sentenced him under the Reagan Tokes Law because it is unconstitutional. However, Conant did not challenge the constitutionality of the Reagan Tokes Law at the trial level, so he has forfeited all but plain error review as to this issue. Conant does not argue plain error, and we decline to sua sponte conduct a plain error analysis.

{¶5} Finally, Conant asserts that the trial court erred when it imposed both a prison term and a no-contact order, which is a community-control sanction. Because a trial court generally lacks authority to impose a prison term and community-control sanction for the same felony offense and no express exception applies in this case, we agree. Accordingly, we vacate the no-contact order and remand for the trial court to issue a corrected sentencing entry that removes reference to that order. We affirm the trial court's judgment in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

{¶6} The Adams County grand jury indicted Conant on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. He pleaded not guilty and the matter proceeded to a jury trial.

{¶7} Ashley McAfee testified that she and Conant had been engaged and had lived together for several years in a two-bedroom apartment. For a couple of weeks prior to October 29, 2019, the couple had been sleeping in different bedrooms because Conant had accused McAfee of cheating on him, and they had been arguing. On October 29, 2019, she went into the bedroom Conant had been sleeping in to get some clothes to get ready for an appointment. Conant accused her of getting ready to cheat on him, followed her into the other bedroom, accused her of cheating on him with "everybody in Adams County," told her he wanted oral sex, exposed his penis, and started to come towards her. McAfee threatened to cut his penis off, and Conant grabbed her by the hair, pulled her off the bed, grabbed her throat, and started to choke her, "pushing downwards with his body weight and squeezing." McAfee testified that this "wasn't painful," but "it was scary." She could not breathe and "ended up blacking out losing consciousness." When she started to "come to," "light, color, and objects were becoming visible again," her head "felt weird" as if it had been hanging "upside down for very long," and her arms and legs were shaking, which reminded her of a seizure. Conant was no longer "over top" of her and choking her; he was standing near her shins, staring at her. She grabbed her phone but Conant jerked it out of her hand. She screamed for help and for someone to call 9-1-1. Conant got behind her and squeezed her throat with one hand and used his other hand to cover her mouth and at

times smack her mouth and face.  When he stopped, she tried to leave the apartment but he would not let her.  Eventually, Conant returned her phone and left the apartment when she called 9-1-1.

{¶8}  McAfee testified that Chief William Newland came to the scene, photographed injuries on her neck, and "called for a squad."  McAfee testified that she had a small cut on her hand from the incident but was not sure how she got it and did not recall trying to fight Conant off.  Paramedics took her blood pressure and pulse and recommended that she go to the hospital to get checked out, but she refused because she "just wanted to be alone" at home.  She did go a few days later.  McAfee admitted that she had prior convictions for falsification in 2014 and theft in 2008.

{¶9}  Chief Newland of the Peebles Police Department testified that when he arrived on the scene, McAfee was crying, shaking, and seemed to "grasp for breath to be able to talk to" him.  His body camera recorded McAfee telling him that Conant had "choked [her] out" and that she "blacked out."  Chief Newland testified that he photographed injuries to McAfee's neck and called paramedics to assess her.  Later that day, he photographed a red mark on Conant's right forearm and scratch marks on the left side of his neck.  Chief Newland testified that the neck injuries appeared to be fresh, and McAfee testified that Conant did not have any marks on his neck or arms before the altercation.

{¶10} Dr. Maura Manning testified that McAfee came to the Adams County Regional Medical Center on October 31, 2019, to have injuries from an assault evaluated.  McAfee "had significant neck pain" and "some markings on her neck * * * that she wanted addressed."  McAfee had a linear bruise on the right side of her neck

that was about four centimeters long, a linear bruise on the left side of her neck that was about three and a half centimeters long, and other smaller areas of bruising on her neck. Dr. Manning testified that "there was definitely injury that would be consistent with muscular strain in the back of the neck" and that McAfee's injuries were consistent with having been strangled. Dr. Manning's notes from the hospital visit state that McAfee "denie[d] loss of consciousness"; however, Dr. Manning testified that McAfee "was concerned because she * * * had an altered mental status and altered level of consciousness at one point during the assault and she wanted to be assessed for that." Dr. Manning testified that there is no medical test that will reveal whether someone who was strangled lost consciousness and that a loss of consciousness due to strangulation can occur with very little visible injury. She also testified that McAfee could have been incapacitated even if she did not lose consciousness. Dr. Manning testified that when a person is being manually strangled, it can take three or four minutes before the person's oxygen saturation drops enough for the person to lose consciousness. Even if pressure is removed right before the person passes out, it "takes a while [sic] for your oxygen saturation to improve enough to be alert and oriented times three," meaning the person is "alive and functioning * * * as they should be."

{¶11} Jason Hayslip, jail administrator for the Adams County Sheriff's Office, testified that jail inmates have a personal pin number for making phone calls, and on November 1, 2019, the jail communications system recorded a call associated with Conant's pin number that was between a male and a female. On the recording, the male asks whether anyone has talked to "Ashley." The female responds, "Not that I know of, I haven't talk to anybody." The male says, "Well fucking ask them, tell, tell

them to ask if she's even going to show up.  That's what I need to know.  And if so if she's subpoenaed to, fucking just say that she don't remember nothing, or something, fuck I don't know."  Hayslip identified the male speaker as Conant but could not identify the female speaker.

{¶12}  The trial court denied Conant's request for a jury instruction on assault as a lesser included offense of felonious assault, and the jury found Conant guilty as charged.  The trial court sentenced him to a minimum prison term of five years and a maximum prison term of seven and a half years.  The court also ordered Conant to have no contact with McAfee.

## II.  ASSIGNMENTS OF ERROR

{¶13}  Conant assigns the following errors for our review:

FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. CONANT BY OVERRULING THE REQUEST FOR AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF ASSAULT

SECOND ASSIGNMENT OF ERROR

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS

THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT'S SIXTH AMENDMENT RIGHTS BY ENTERING JUDGEMENT [sic] OF CONVICTION AFTER A TRIAL AT WHICH APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR HER [sic] DEFENSE

FOURTH ASSIGNMENT OF ERROR

THE REAGAN TOKES ACT, AS ENACTED BY THE OHIO LEGISLATOR [sic] IS UNCONSTITIONAL, AND THE TRIAL COURT ERRED BY SENTENCING MR. CONANT UNDER THAT ACT

FIFTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. CONANT BY SENTENCING HIM TO PRISON FOR A TERM OF INCARCERATION, AND ISSUING A NO-CONTACT ORDER.

## III.  JURY INSTRUCTIONS

**{¶14}** In the first assignment of error, Conant contends that the trial court erred when it refused to instruct the jury on assault under R.C. 2903.13(A).  The parties agree that assault is a lesser included offense of felonious assault under R.C. 2903.11(A)(1), and Conant asserts that the jury reasonably could have found that McAfee suffered physical harm, warranting an assault conviction, but that the physical harm was not serious as required for a felonious assault conviction because she "suffered a brief loss of consciousness but did not seek treatment at the scene" and "[n]one of the injuries appear to be permanent."  Conant acknowledges that other Ohio appellate courts have held that being choked to the point of unconsciousness is serious physical harm but urges us to reject that precedent and follow the dissenting opinion in *State v. Mushrush*, 135 Ohio App.3d 99, 733 N.E.2d 252 (1st Dist.1999).

**{¶15}** "When the indictment * * * charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."  R.C. 2945.74; *See also* Crim.R. 31(C).  "The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis."  *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6.

**{¶16}** "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *Id.*, quoting *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). In making this determination,

> a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.

*State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889*,* paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

**{¶17}** "The second tier looks to the evidence in a particular case and determines whether ' "a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." ' " *Deanda* at ¶ 6, quoting *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. "The trial court has discretion in determining whether the record contains sufficient evidentiary support to warrant a jury instruction on the lesser-included offense, and we will not reverse that determination absent an abuse of discretion." *State v. Blanton*, 4th Dist. Adams No. 16CA1035, 2018-Ohio-1278, ¶ 64. "An abuse of discretion * * * implies that the court's attitude is arbitrary, unreasonable, or unconscionable." *Id.* Although "the discretion of the trial judge play[s] a role in whether lesser-included-offense instructions are appropriate * * * the evidence is crucial[.]" *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 21. " '[T]he trial court must view the evidence in the light most favorable to the defendant.' " *Id.*, quoting *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶

37. "The trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *Id.* at ¶ 34.

{¶18} R.C. 2903.11(A)(1) states: "No person shall knowingly * * * [c]ause serious physical harm to another * * *." R.C. 2903.13(A) states: "No person shall knowingly cause or attempt to cause physical harm to another * * *." " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Serious physical harm to persons" includes "[a]ny physical harm * * * that involves some temporary, substantial incapacity[.]" R.C. 2901.01(A)(5)(c).

{¶19} We agree with the parties that assault under R.C. 2903.13(A) is a lesser included offense of felonious assault under R.C. 2903.11(A)(1). *State v. Nipper*, 12th Dist. Butler No. CA2002-06-135, 2003-Ohio-4449, ¶ 24. Felonious assault carries a greater penalty than assault. *See* R.C. 2903.11(D)(1)(a) (felonious assault is generally a second-degree felony); R.C. 2929.14(A)(2)(a) (second-degree felony committed on or after March 22, 2019, subject to minimum prison term of two years); R.C. 2903.13(C)(1) (assault is generally a first-degree misdemeanor); R.C. 2929.24(A)(1) (first-degree misdemeanor subject to jail term not to exceed 180 days). An element of felonious assault, i.e., the physical harm must be serious, is not required to prove assault, and felonious assault as statutorily defined cannot be committed without assault as statutorily defined also being committed.

{¶20} However, viewing the evidence in a light most favorable to Conant, the jury could not reasonably find him not guilty of felonious assault but guilty of assault.

McAfee testified that Conant choked her to the point that she lost consciousness, and we agree with our sister districts that a brief loss of consciousness is a temporary, substantial incapacity and is therefore serious physical harm. *See State v. Craig*, 1st Dist. Hamilton No. C-160816, 2020-Ohio-3103, ¶ 29; *State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16; *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 26; *State v. Waugaman*, 5th Dist. Richland No. 18CA18, 2019-Ohio-1102, ¶ 29; *State v. Wimpey*, 6th Dist. Lucas No. L-18-1262, 2019-Ohio-4823, ¶ 23; *State v. Buchanan*, 8th Dist. Cuyahoga No. 105706, 2018-Ohio-1086, ¶ 25; *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19; *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716 & 11AP-766, 2012-Ohio-2989, ¶ 34; *State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 18.

**{¶21}** We decline to adopt the position of the dissent in *Mushrush*. In that case, the defendant set off a mace canister in a school auditorium during a talent show, and a woman had a seizure and "went into convulsions." *Mushrush*, 135 Ohio App.3d at 104, 733 N.E.2d 252 (lead opinion). The defendant pleaded guilty to felonious assault of the woman, assault of another individual, and three counts of inducing panic. *Id.* at 104-105. For purposes of sentencing, the trial court found that the defendant's conduct was more serious than conduct normally constituting the offense of inducing panic, in part because he caused serious physical harm to the woman. *Id.* at 108. One member of the appellate court panel agreed because the woman "suffered choking and unconsciousness as a direct result of the defendant's actions," and "[b]eing choked 'to the point of unconsciousness constitutes serious physical harm * * * as it cause[s] [the victim] to be in a state of temporary, substantial incapacity.' " (Second and third

alterations in *Mushrush*.)  *Id.*, quoting *State v. Czajka*, 101 Ohio App.3d 564, 574, 656 N.E.2d 9 (8th Dist.1995).  Even though the defendant had pleaded guilty to felonious assault, the dissenting jurist opined that he did not commit that crime, that "[n]o argument can be seriously advanced that the harm to [the woman], unfortunate though it was, fits any of the" statutory categories of serious physical harm, and that *Czajka* was "wrongly decided."  *Id.* at 115-116 (Painter, J., dissenting).  We do not find these conclusory assertions persuasive.

{¶22} McAfee's testimony that Conant choked her to the point that she lost consciousness is consistent with her statement to Chief Newland immediately after the incident and is supported by photographic evidence of the bruises on her neck and Dr. Manning's testimony that the injuries were consistent with strangulation, which could have caused a loss of consciousness with very little visible injury.  Although Dr. Manning's notes provide some evidence that McAfee experienced a change in consciousness short of a loss of consciousness when she was being strangled, Dr. Manning testified that McAfee reported "an altered mental status and altered level of consciousness" and explained that McAfee could have been incapacitated even if she did not lose consciousness.  In describing the effects of the strangulation, McAfee could not account for a period of time during which Conant stopped choking her and changed positions and testified that she suffered temporary vision loss, that her head felt weird, and that her arms and legs were shaking.  Given this evidence, the jury could not reasonably find that the harm McAfee suffered was not serious.  The trial court did not abuse its discretion when it refused to instruct the jury on assault.  Accordingly, we overrule the first assignment of error.

## IV. SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE

{¶23} In the second assignment of error, Conant contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He asserts that the "only evidence" that he committed the offense is McAfee's testimony because he "did not make any admissions and no independent witnesses testified." Conant also asserts that the evidence does not show McAfee suffered serious physical harm because "[t]he most significant harm that [she] suffered was the temporary loss of consciousness."

{¶24} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Alteration in *Maxwell*.) *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13. "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, ___ U.S. ___, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319.

{¶25} In determining whether a conviction is against the manifest weight of the evidence, an appellate court

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. In order to satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.

Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.) *Anderson* at ¶ 14-15.

**{¶26}** The state introduced evidence from which any rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt, and in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that reversal of the conviction is necessary. The state introduced evidence that Conant strangled McAfee to the point that she suffered temporary, substantial incapacity. The jury was free to believe McAfee's testimony even though no one else witnessed the attack and Conant did not confess. Conant's effort to influence McAfee's testimony provides some evidence of his guilt, and again, McAfee's testimony is supported by photographic evidence of the bruises on her neck and Dr. Manning's testimony that the injuries were consistent with strangulation, which could have caused a loss of consciousness with very little visible injury and could have caused incapacity without a loss of consciousness. Because

sufficient evidence supports the felonious assault conviction and it is not against the manifest weight of the evidence, we overrule the second assignment of error.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

**{¶27}** In the third assignment of error, Conant contends that the trial court violated his Sixth Amendment rights when it entered a judgment of conviction after a trial at which he received ineffective assistance of counsel.

**{¶28}** To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to satisfy either part of the test is fatal to the claim. *See Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955).

### A. Juror Issue

**{¶29}** Conant contends that trial counsel was ineffective for not asking the court to dismiss a juror who felt that he should have to testify in violation of his Fifth

Amendment right against self-incrimination or asking the court to question her outside the presence of the other jurors to ensure she could be fair and impartial. Conant directs our attention to the following exchange, which occurred prior to jury deliberations, after the court asked whether the jurors had any questions:

> UNKNOWN FEMALE: Is there any way, I mean, I don't think I'm allowed for a while [sic], but could James say something? He's not said anything the whole time we've been here, and I didn't know that's the reason I'm asking.
>
> COURT: Well um, certainly he's consulted with his counsel, but I return you, uh, to the fact that [sic].
>
> UNKNOWN FEMALE: [inaudible]
>
> COURT: Um, yeah, it is not necessary that the defendant take the witness stand in his own defense.
>
> UNKNOWN FEMALE: Okay.
>
> COURT: Uh, the defendant has a constitutional right. What most of us know as the Fifth Amendment right not to testify. The fact that he did not testify must not, I repeat, must not be considered for any purpose.
>
> UNKNOWN FEMALE: Okay. Well it wasn't I was just trying to figure voices out [sic].
>
> COURT: Okay. I see what you're saying.
>
> UNKNOWN FEMALE: Okay.
>
> COURT: You'll have to rely upon the testimony and the weight that you may give that testimony good or bad.
>
> UNKNOWN FEMALE: Okay.

{¶30} Although the unknown female does appear to be a juror, counsel's failure to move for further questioning of or dismissal of her was not ineffective assistance. The juror explained that she had asked whether Conant could "say something,"

because she was "trying to figure voices out."  When her statements are considered in context with the evidence introduced at trial, which included the recording of the jail call, it is apparent that the juror wanted to know if she could hear Conant's voice to compare it to the male voice which Hayslip identified as Conant's voice.  The juror did not express a belief that Conant should have to testify or that his failure to do so could or should be considered as evidence against him.  When the court reiterated its prior instruction that Conant's decision to not testify "must not be considered for any purpose," the juror expressed that she understood, stating, "Okay."  Because the juror did not express a belief that was inconsistent with Conant's right against self-incrimination, a request for her dismissal or further questioning on the basis that she had would have been futile.  " ' The law does not require counsel to take a futile act' * * *."  *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 24, quoting *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 & 11CA3242, 2012-Ohio-4583, ¶ 20.  Accordingly, counsel's performance with regard to this matter was not deficient.

### B.  Other Acts Evidence

**{¶31}** Conant contends that trial counsel rendered ineffective assistance by allowing testimony about his prior bad acts in violation of Evid.R. 404(B). Conant asserts that trial counsel did not object when McAfee testified that she was sleeping in a different bedroom than Conant "[b]ecause the abuse kept getting worse, the fighting, arguing," and counsel did not move to strike this testimony.  Conant also asserts that on cross-examination, trial counsel asked McAfee about fighting with him in the days leading up to the incident, asked whether the relationship had been violent in the past, and was cautioned during a sidebar that "he was close to opening doors that might

allow certain evidence to be used against Mr. Conant." Conant asserts that evidence of his prior bad acts was prejudicial because the strength of the other evidence against him "was minimal."

**{¶32}** "The trial court has broad discretion in the admission or exclusion of evidence[.]" *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 65 (4th Dist.). "Generally, all relevant evidence is admissible." *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 34, citing Evid.R. 402. However, Evid.R. 404(B) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *

"The listed exceptions within Evid.R. 404(B) are not exclusive, and 'other acts' evidence not fitting within the enumerated categories may be admissible so long as the evidence is admitted for any proper purpose other than proving the defendant's propensity to act in * * * conformity with a particular trait of his [or her] character." *State v. Wilkins*, 10th Dist. Franklin No. 18AP-797 & 18AP-798, 2020-Ohio-3428, ¶ 24.

**{¶33}** McAfee's testimony did not violate Evid.R. 404(B). On direct examination, when McAfee testified that she was sleeping in a different bedroom "[b]ecause the abuse kept getting worse, the fighting, arguing," she did not testify that Conant had physically attacked her. On cross-examination, McAfee testified that a couple of weeks before the incident in question, she and Conant had an argument about him going to see his sister get taken off of life support. She also testified that they were sleeping in different bedrooms "[b]ecause of the arguing and him accusing me of cheating on him." Again, she did not testify that Conant had physically attacked her. Although defense

counsel inquired about whether the relationship had been violent in the past, counsel withdrew the question before McAfee answered it.

**{¶34}** McAfee did not testify about other acts of violence Conant committed which might have led the jury to improperly conclude that he had a violent character which he acted in conformity with on October 29, 2019. Evidence that in the weeks leading up to the felonious assault, the couple had argued about family matters and alleged infidelity and had stopped sharing a bedroom does not show that Conant had a violent character but rather was background information that explained the status of the relationship between Conant and McAfee and circumstances leading up to the felonious assault. "Background information is admissible to give the jury the setting of the case." *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 32. Because McAfee's testimony did not violate Evid.R. 404(B), defense counsel's performance was not deficient, and we overrule the third assignment of error.

## VI. REAGAN TOKES LAW

**{¶35}** In the fourth assignment of error, Conant contends that the trial court erred when it sentenced him pursuant to the Reagan Tokes Law because it is unconstitutional.

**{¶36}** The Reagan Tokes Law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first or second degree felony committed on or after March 22, 2019, impose a minimum prison term under that provision and a maximum prison term determined under R.C. 2929.144(B). R.C. 2929.144(C). There is a presumption that the offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive

earned early release date, whichever is earlier." R.C. 2967.271(B). A presumptive earned early release date is a date determined under procedures described in R.C. 2967.271(F) which allow the sentencing court to reduce the minimum prison term under certain circumstances. R.C. 2967.271(A)(2). The Department of Rehabilitation and Correction ("DRC") may rebut the presumption if it determines at a hearing that one or more statutorily numerated factors applies. R.C. 2967.271(C). If DRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period of time, determined and specified by DRC, that "shall not exceed the offender's maximum prison term." R.C. 2967.271(D)(1).

{¶37} Conant maintains that the Reagan Tokes Law violates the separation of powers doctrine and due process because R.C. 2967.271(C)(1) allows DRC to extend a prison sentence if it determines, among other things, that the offender committed an unprosecuted violation of the law. He asserts that this is "the same scheme" that existed under former R.C. 2967.11, which allowed the parole board to extend an offender's stated prison term if it determined the offender committed a criminal offense while incarcerated. Conant argues that in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), the Supreme Court of Ohio held former R.C. 2967.11 violated the separation of powers doctrine because trying, convicting, and sentencing inmates for crimes committed while incarcerated is not an exercise of executive power. He also argues that due process requires that the decision to restrict an individual's freedom be made by a judge, relying on *White v. Konteh*, 11th Dist. Trumbull No. 99-T-

0020, 1999 WL 587976 (Mar. 23, 1999), which held that former R.C. 2967.11 violated due process.

{¶38} The state maintains that Conant lacks standing to challenge the constitutionality of the Reagan Tokes Law because he has not been injured by its allegedly unconstitutional provision as DRC has not maintained his incarceration beyond his minimum prison term. Alternatively, the state argues that the law is distinguishable from former R.C. 2967.11. The state asserts that under former R.C. 2967.11, the parole board could extend an offender's sentence beyond the prison term imposed by the sentencing court whereas under the Reagan Tokes Law, the court imposes the minimum and maximum sentence, and DRC only decides when the defendant will be released from prison within that time range. The state maintains that this is "no different than parole; and the powers of parole have been vested in the Executive and upheld for a very long time."

{¶39} The constitutionality of a statute presents a question of law we review de novo. *Hayslip v. Hanshaw*, 2016-Ohio-3339, 54 N.E.3d 1272, ¶ 27 (4th Dist.). However, " 'the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court.' " *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986). "We may review the trial court decision for plain error, but we require a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." (Citation omitted.) *Id.* at ¶ 16. "The burden of demonstrating plain error is on the party asserting it." *Id.* The

Supreme Court of Ohio has also "stated that a forfeited constitutional challenge to a statute is subject to review 'where the rights and interests involved may warrant it.' " *Id.*, quoting *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus.

{¶40} Conant did not assert a constitutional challenge to the Reagan Tokes Law at the trial level and has therefore forfeited all but plain error. Conant has not argued plain error on appeal, and we decline to construct a plain error argument on his behalf, particularly when R.C. 2967.271(C)(1) has not been and might never be applied to him, and he has not responded to the state's standing argument. *See generally State v. Steers*, 4th Dist. Washington No. 11CA33, 2013-Ohio-3266, ¶ 20 (declining to sua sponte review an assignment of error using a plain error analysis). Accordingly, we overrule the fourth assignment of error.

## VII.  NO-CONTACT ORDER

{¶41} In the fifth assignment of error, Conant contends that the trial court erred by imposing a prison term and a no-contact order, which is a community-control sanction, for the same offense, relying on *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512. The trial court acknowledged that the no-contact order conflicted with Supreme Court of Ohio precedent and created an "appealable issue" but imposed the order anyway because DRC had started to give inmates tablets with communication abilities. The state urges us to affirm the no-contact order because DRC has "blurred the lines between prison sentences and community control sanctions."

{¶42} When reviewing felony sentences appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d

516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 7.  R.C. 2953.08(G)(2) provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion"; rather, the appellate court may increase, reduce, or modify the sentence or vacate it and remand for resentencing if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

"The defendant bears the burden of establishing by clear and convincing evidence that the sentence is either contrary to law or not supported by the record."  *State v. Culbreth*, 4th Dist. Highland No. 18CA8, 2019-Ohio-138, ¶ 19.  Clear and convincing evidence is

> that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶43} In *Anderson*, the Supreme Court of Ohio considered whether a trial court has the authority to impose a prison term and a no-contact order with the victim for the same felony offense.  *Anderson* at ¶ 1.  The Supreme Court explained that a trial court may only impose a sentence that is provided for by statute, that "Ohio courts have recognized that a no-contact order is a community-control sanction," and that the felony-sentencing statutes "reflect that the General Assembly intended prison terms and community-control sanctions to be alternative sanctions" for a felony offense.  *Id.* at ¶ 12, 17, 28.  The Supreme Court held that "as a general rule, when a prison term and

community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions." *Id.* at ¶ 31. Therefore, "[a] trial court cannot impose a prison term and a no-contact order for the same felony offense." *Id.* at ¶ 1.

**{¶44}** The trial court's decision to impose a no-contact order in addition to Conant's prison term was contrary to law. "Trial courts and intermediate courts of appeals are bound by and must follow decisions of the Ohio Supreme Court." *State v. Cox*, 4th Dist. Adams No. 02CA751, 2003-Ohio-1935, ¶ 12. Pursuant to *Anderson*, trial courts lack authority to impose a prison term and community-control sanction for the same felony offense unless an express exception applies. No exception has been identified in this case. Accordingly, we sustain the fifth assignment of error, vacate the no-contact order, and remand for the trial court to issue a corrected sentencing entry that removes reference to that order.

## VIII. CONCLUSION

**{¶45}** We overrule the first, second, third, and fourth assignments of error and sustain the fifth assignment of error. Accordingly, we affirm the trial court's judgment in part, vacate it in part, and remand for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART
AND VACATED IN PART.
CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND VACATED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**