[Cite as *State v. N.S.*, 2020-Ohio-5318.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

      Plaintiff-Appellee,           :                No. 20AP-66
                                        (C.P.C. No. 18CR-4943)
v.                                         :                No. 20AP-67
                                        (C.P. C. No. 19CR-0880)
[N.S.],                                    :

                                          (REGULAR CALENDAR)
      Defendant-Appellant.          :

---

D E C I S I O N

Rendered on November 17, 2020

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Bellinger & Donahue*, and *Kerry M. Donahue*, for appellant.

---

APPEALS from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Defendant-appellant, N.S., appeals from judgments of the Franklin County Court of Common Pleas convicting him of felonious assault in violation of R.C. 2903.11, rape in violation of R.C. 2907.02, and kidnapping in violation of R.C. 2905.01. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case arises out of the rape and kidnapping of two women in the Linden area of Columbus, Ohio in April 2018. In the case of one of the victims, E.W., appellant was also charged with felonious assault.

{¶ 3} Victim A.D. testified that in April 2018, she was addicted to opioids and working as a prostitute in order to support her drug habit. On the date of trial, A.D. was in

jail for drug-related charges.  Though she admitted she was experiencing opiate withdrawal while on the witness stand, she answered "yes" when the prosecutor asked her if she was "at least relatively sober."  (Tr. Vol. II at 139.)  She identified appellant, as he sat in the courtroom, as the man who picked her up in early April 2018 near the intersection of Hudson Street and Duxberry Avenue for the purpose of exchanging money for sex.  According to A.D., in a typical transaction the parties agree to "[e]xchange the money, do the deed, be done."  (Tr. Vol. II at 140.)  A.D. testified the customer, also known as a "john[]," would pull his vehicle to the curb, flag her down, and drive the vehicle to a more secluded area where the sex act would take place, usually in the vehicle.[1]  (Tr. Vol. II at 189.)  She also stated that she would "sometimes" agree to go wherever the john wanted, including a private residence or other dwelling where the sex would take place.  (Tr. Vol. II at 140.)

{¶ 4}  When she was asked if she remembered the day when appellant picked her up at the intersection of Hudson Street and Duxberry Avenue, she responded: "Kind of, ya."  (Tr. Vol. II at 141.)  She stated that appellant was driving a blue "truck-ish thing" that looked like a Ford Explorer.  (Tr. Vol. II at 141.)  A.D. recalled appellant took her to his home, and she recognized the residence from a photograph shown to her by the prosecutor.  (State's Ex. D-1.)  She remembered that after they entered the home, she observed appellant prop a board against the front door to secure it.  A.D. testified all the windows were "boarded up from the inside out."  (Tr. Vol. II at 143.)

{¶ 5}  According to A.D., when they went upstairs to have sex, both she and appellant removed their clothing, but appellant refused to pay.  When A.D. told appellant she was leaving and began putting her clothes back on, appellant told her: "No.  You're either going to do what I want you to do or I'm going to do it whether you like it or not."  (Tr. Vol. II at 144.)  Appellant then "threatened me that the dogs he had were going to eat me if I tried to run."  (Tr. Vol. II at 144.)  A.D. testified she never saw any dogs, but she could hear them barking outside.  Appellant then demanded she perform oral sex and pushed her head down so violently that he split her lip.  Appellant proceeded to have vaginal intercourse with A.D. against her will and demanded she perform oral sex twice.  She believed he ejaculated during vaginal intercourse.

---

[1] The term "john[]," in reference to the customer, was used during E.W.'s cross-examination.  (Tr. Vol. II at 189.)

{¶ 6}   A.D. recalled that it was "super cold" in the bedroom where the rape took place "like nobody lived there" and that she remembered seeing a television and "[m]aybe * * * shelves that were connected in the wall." (Tr. Vol. II at 146-47.)  A.D. testified she was held against her will in the bedroom from 2:00 or 3:o0 in the morning until daybreak and that appellant was raping her "pretty much the entire time." (Tr. Vol. II at 147.)  On cross-examination, A.D. admitted she entered appellant's home with the intent to exchange sex for money, but she withdrew her consent when appellant refused to pay.

{¶ 7}   A.D. left appellant's home crying, and she told "people that I was living with" about the crime. (Tr. Vol. II at 148.)  A.D. maintained she did not go to the hospital or to the police because she knew she had outstanding warrants.  She stated that she eventually told her counselor about the crime after she learned others had come forward.  A.D. agreed to testify against appellant "[b]ecause I don't think he should be able to do this to anyone else." (Tr. Vol. II at 149.)

{¶ 8}   On cross-examination, A.D. admitted that she did not ask for any money from appellant until they went upstairs to his bedroom.  According to A.D., she refused sex only after he refused to pay her.  A.D. testified appellant let her go after committing the rape when she "told him a friend had took down his license plate." (Tr. Vol. II at 157.)

{¶ 9}   Victim E.W. testified that in April 2018, she was addicted to heroin and crack cocaine, and she had been working as a prostitute on Hudson Street for approximately one year when she encountered appellant.  E.W. stated she now lives in Chillicothe, Ohio, and she graduated from drug rehabilitation about 8 months prior to trial.  E.W. had been sober for 14 months at the time she gave her testimony, and she stated she wants to train as a paramedic to help other addicts.

{¶ 10}   E.W. testified that in April 2018, her usual practice was to approach the john's vehicle, get in, collect the money, and then pull over somewhere or go to the john's home where she would "handle business, and then I'd leave." (Tr. Vol. II at 165.)  She answered "[y]es" when she was asked if she got paid up front. (Tr. Vol. II at 165.)  E.W. identified appellant as he sat in the courtroom as the man who picked her up on April 5, 2018 in a navy blue Ford Explorer at the corner of Hudson Street and Hiawatha Street.  She knew it was a Ford Explorer because she had owned the same type of vehicle before she became addicted to drugs.

{¶ 11} E.W. testified when she got in appellant's vehicle, she said: "Oh it's cold. You ain't got no heat?" (Tr. Vol. II at 168.) Appellant responded: "I got some at my house. Let's go." (Tr. Vol. II at 168.) E.W. testified appellant took her to a residence on Duxberry Avenue near Hamilton Avenue, approximately one block from where she was living. She identified State's Exhibit D-1 as a photograph of appellant's home, but she stated there was a chain link fence around the property when appellant took her there. She recalled the windows of the home were boarded up and when she went inside, appellant propped a two by four up against a metal bar attached to the inside of the front door.

{¶ 12} According to E.W., she asked for money before going upstairs, but appellant told her: "Bitch, you know what it is." (Tr. Vol. II at 171.) E.W. testified she still believed appellant would pay her when she asked him what he wanted. However, when she asked for money a second time, appellant "started getting violent," and he told her "I'm going to choke you. I'm going to choke you." (Tr. Vol. II at 172.) E.W. testified the last thing she remembered before passing out was appellant on top of her on the couch with his hands around her neck while she tried to kick him off. When E.W. regained consciousness, she was in a bedroom, tied naked to the bed with cables wrapped around her hands and feet, and duct tape over her mouth.

{¶ 13} E.W. testified appellant began raping her everywhere but in her anus, and he only stopped for a moment to snort some cocaine and smoke a cigarette:

> Q. Okay. Now, when you say he raped you, I don't want to belabor the point, but where was his penis in relation to your body?
>
> A. Everywhere. In my mouth. Everywhere but anal.
>
> Q. Okay.
>
> A. Like he vaginally raped me. He had sat on top of me at one point so I could give him oral sex. It lasted for hours.
>
> Q. Did he do anything else to you?
>
> A. No.
>
> Q. So he forced oral sex on you?
>
> A. Yes.
>
> Q. Did he perform oral sex on you?
>
> A. Yes.
>
> Q. So he performed cunnilingus on you as well?

A. Yes.

Q. Okay. Do you remember how long this went on?

A. Hours.

(Tr. Vol. II at 174-75.)

{¶ 14} E.W. stated at one point during the rape, appellant asked her to take a drag from his cigarette and when she asked him to untie her he said: "You made me do this." (Tr. Vol. II at 175.) E.W. testified about what happened next:

Q. Okay. So what happened? I mean, how did this end?

A. Well, I thought it was going to end. This part really gets to me, and I still -- like, it hurts me because I, like, thanked him and everything when he untied me, and I thought I was done. He let me get dressed. And I'm at the door, and he throws me back on the bed and ties me up again and continues to rape me.

* * *

Q. Okay. At that point, did he just force vaginal intercourse on you?

A. Yeah, but he kept on. Like, when I was, like, moving and crying trying to squirm, he's, like, "Bitch, I'll rape you in your ass if you don't stop."

I'm, like, "Please don't," like.

Q. Okay. So after you thought he was going to let you go but he didn't and he kept doing this to you, what happened next? How did you ultimately leave?

A. He said, "Real men have to go to work." He's, like, "I'm going to have to let you go because real men have to go to work."

Q. What happened next?

A. And then I did get dressed, and he said he'll give me a ride. He gave me ride. He gave me his phone number and told me to call him and that he'll pay me the next time I see him.

(Tr. Vol. II at 176-78.)

{¶ 15} E.W. testified she was held by appellant against her will and forcibly raped by appellant from 2:00 a.m. or 3:00 a.m. on April 5, 2018 until 8:00 a.m. After being released by appellant, E.W. called a friend and told him what happened. Her friend agreed to call the police and take her to the hospital when he finished work. According to E.W., after

speaking with her friend on the telephone, she had sex with another john for drug money because she was "dope sick." (Tr. Vol. II at 193.) She did recall that she returned to appellant's address with her friend and obtained the license plate number of the vehicle parked outside the residence.

{¶ 16} At the hospital, appellant was seen by Brittany Nicole Rice, a Sexual Assault Nurse Examiner. Rice interviewed E.W. and her medical report was admitted into evidence as State's Exhibit A-1. Rice testified E.W. was tearful but calm during the interview. Though E.W. showed no latent sign of a physical or internal injury, Rice stated that E.W. did refuse consent to the customary head-to-toe examination. E.W. did permit Rice to obtain swabs from her mouth, anus, and vaginal region for forensic testing. Rice also took a narrative statement about the rape from E.W., and she read the statement to the jury. The narrative statement Rice read into the record essentially sets forth the same details and sequence of events described by E.W. in her trial testimony.

{¶ 17} In 2018, Earl Westfall worked as a detective in the sexual assault unit of the Columbus Police Department ("CPD"). He testified he was contacted by another officer in April 2018 who had received a report of a rape and kidnapping from a friend of the victim. The officer gave Westfall the vehicle description, location, and license plate number obtained from the victim's friend, and the information led him to appellant. The next day Westfall interviewed the victim, E.W. When E.W. was able to pick appellant's photograph out of a photo array administered by another detective, Westfall had enough information to obtain a warrant for appellant's arrest. Appellant was eventually arrested in the state of Washington in September 2018, and a DNA sample was obtained.

{¶ 18} Forensic scientist Lynndsey Simon is employed at the CPD crime lab. Simon performed a forensic analysis of the material on the swabs Rice obtained from E.W. According to Simon, only the vaginal swab contained interpretable DNA, and appellant was excluded as a major contributor. Simon did state that appellant could not be excluded as a minor contributor because the sample contained a mixture of DNA from three or four individuals.

{¶ 19} On October 4, 2018, appellant was indicted by a Franklin County Grand Jury for his crimes against E.W., including one count of felonious assault in violation of R.C. 2903.11, a felony of the second degree, three counts of rape in violation of R.C. 2907.02, all

felonies of the first degree, and one count of kidnapping in violation of R.C. 2905.01, a felony of the first degree.[2] The case against appellant was subsequently assigned case No. 18CR-4943.

{¶ 20} On February 20, 2019, appellant was indicted by a Franklin County Grand Jury for his crimes against A.D., including three counts of rape in violation of R.C. 2907.02, all felonies of the first degree, and one count of kidnapping in violation of R.C. 2905.01, a felony of the first degree. The case against appellant was subsequently assigned case No. 19CR-0880.

{¶ 21} The two cases against appellant were joined for a single jury trial. At the close of the case-in-chief of plaintiff-appellee, State of Ohio, the trial court granted appellant's Crim.R. 29 motion for acquittal as to the count of the indictment in case No. 19CR-0880 charging appellant with the rape of A.D. by anal intercourse, on finding that there was no testimony to support a guilty verdict on that charge. The jury subsequently found appellant guilty of all remaining charges in both cases.

{¶ 22} On January 31, 2020, the trial court conducted a sentencing hearing. As to case No. 19CR-0880, the trial court sentenced appellant to concurrent 11-year prison terms for each of the 2 rape convictions, consecutive to an 11-year prison term for kidnapping. The trial court ordered appellant to serve his 22-year prison term in case No. 19CR-0880 consecutive to his sentence in case No. 18CR-4943.

{¶ 23} As to case No. 18CR-4943, the trial court sentenced appellant to a prison term of 6 years for felonious assault as charged in Count 1 of the indictment consecutive to a 6-year prison sentence for rape (cunnilingus) as charged in Count 2. The trial court also sentenced appellant to concurrent prison terms of 6 years for rape (vaginal intercourse) as charged in Count 3, 6 years for rape (fellatio) as charged in Count 4, and 6 years for kidnapping as charged in Count 5. The trial court further ordered appellant to serve the prison term for Counts 1 and 2 consecutive to the prison term for Counts 3, 4, and 5 for a total of 28 years in prison. Consistent with the judgment entry in case No. 19CR-0880, the trial court ordered appellant to serve the 28-year sentence in case No. 18CR-4943

---

[2] Appellant was also indicted for similar crimes against another victim, but the prosecution dismissed the charges prior to trial. (Nov. 14, 2019 Jgmt. Entry at 2.)

consecutive to the 22-year sentence in case No. 19CR-0880, for an aggregate prison term of 50 years.

{¶ 24} Appellant timely appealed to this court from the judgments in both cases.

## II.  ASSIGNMENTS OF ERROR

{¶ 25} Appellant assigns the following as trial court error:

> [1.] IT WAS ERROR FOR THE COURT TO JOIN THE TWO SEPARATE CASES FOR TRIAL.
>
> [2.] TO THE EXTENT THE ERROR OF JOINDER IS REVIEWED ON A PLAIN ERROR BASIS COUNSEL WAS INEFFECTIVE FOR NOT PRESERVING THE ARGUMENT.
>
> [3.] THE GUILTY VERDICTS, PARTICULARLY THE VERIDCT [sic] OF GUILTY AS TO COUNT THREE INVOLVING [E.W.], WAS AGAINST THE SUBSTANTIAL WEIGHT OF THE EVIDENCE.
>
> a. THE JURY INSTRUCTION ON PENETRATION DID NOT CLARIFY THAT PENETRATION IS A NECESSARY ELEMENT FOR RAPE.
>
> [4.] THE VERDICTS WERE AGAINST THE MANIFEST WIGHT [sic] OF THE EVIDENCE.

## III.  LEGAL ANALYSIS

### A.  First Assignment of Error

{¶ 26} In his first assignment of error, appellant argues the trial court erred when it joined the two indictments in a single trial.  We disagree.

{¶ 27} Joinder is governed generally by Crim.R. 8(A), which provides in relevant part as follows:

> Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 28} Crim.R. 13 provides that "[t]he court may order two or more indictments * * * to be tried together, if the offenses or the defendants could have been joined in a single indictment or information.  The procedure shall be the same as if the prosecution were under such single indictment."

{¶ 29} Crim.R. 14, which governs severance in a criminal matter, states: "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, * * * or by such joinder for trial together of indictments, * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶ 30} Here, appellee moved the trial court, pursuant to Crim.R. 8 and 13, for an order that the two indictments be tried together. Appellant filed a memorandum in opposition to joinder. Though the trial court did not issue a written decision on the motion, the record shows the trial court elected to combine the two indictments for a single trial. Appellant did not, thereafter, file a motion for relief from the joinder of the two indictments.

{¶ 31} "Joinder is liberally permitted to conserve judicial resources, reduce the chance of * * * incongruous results and excessive trials, and diminish inconvenience to witnesses." *State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452, ¶ 99, *discretionary appeal denied*, 151 Ohio St.3d 1511, 2018-Ohio-365, citing *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992), citing *State v. Torres*, 66 Ohio St.2d 340, 343 (1981). The Supreme Court of Ohio has acknowledged, however, "that joinder of offenses of the same or similar character 'creates a greater risk of prejudice to the defendant,' especially where the benefits from consolidation are reduced because the otherwise-unrelated offenses involved different times, locations, victims, and witnesses." *Armengau* at ¶ 99, quoting *Schaim* at 58, fn. 6. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a [trial] court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *Schaim* at 59, citing *State v. Hamblin*, 37 Ohio St.3d 153, 158-59 (1988); *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964). "Because the two tests are disjunctive, the satisfaction of one negates an accused's claim of prejudice without consideration of the other." *State v. Truss*, 10th Dist. No. 18AP-147, 2019-Ohio-3579, ¶ 17, citing *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 38 (10th Dist.), citing *State v. Cameron*, 10th Dist. No. 09AP-56, 2009-Ohio-6479, ¶ 35.

{¶ 32} Trial courts have considerable latitude in determining whether severance is warranted, and an appellate court will not reverse a trial court's decision to deny severance absent an abuse of discretion. *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384,

¶ 24, citing *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 41, citing *State v. Johnson*, 10th Dist. No. 96APA06-751 (Mar. 4, 1997). When, however, a defendant has "neither sought severance pursuant to Crim.R. 14 nor objected to the joinder, [the appellate court does] not review the trial court's decision for an abuse of discretion; instead, * * * on appeal [the appellate court applies] a plain-error standard of review to the trial court's decision regarding joinder." *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259 ¶ 22. Because appellant opposed appellee's pretrial motion to join the two indictments, we shall apply an abuse of discretion standard in reviewing joinder on appeal. A trial court abuses its discretion when its ruling is " ' "unreasonable, arbitrary, or unconscionable." ' " *Sullivan* at ¶ 24, quoting *State v. Vasquez*, 10th Dist. No. 05AP-705, 2006-Ohio-4074, ¶ 6, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

### 1. Other Crimes Evidence Test

{¶ 33} Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. *State v. Smith*, ___ Ohio St.3d ___, 2020-Ohio-4441. Evid.R. 404(B) recognizes that evidence of other crimes may "be admissible for * * * proof of motive, opportunity, intent, preparation, plan." *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 30. The Supreme Court, in two recent opinions, provided guidance to trial courts in the proper application of Evid.R. 404(B). *See Smith*; *State v. Hartman*, ___ Ohio St.3d ___, 2020-Ohio-4440. In *Smith*, the Supreme Court set forth the analytical framework as follows:

> Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. Other-acts evidence may, however, be admissible for another non-character-based purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, ___ Ohio St.3d ___, 2020-Ohio-4440, ___ N.E.3d ___, ¶ 22.
>
> In *Hartman*, we provided a guide for courts to evaluate proposed other-acts evidence to determine whether the evidence connects to a permissible purpose without relying on any improper character inferences. The threshold question is whether the evidence is relevant. *Id.* at ¶ 24; Evid.R. 401; *see also State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695,

983 N.E.2d 1278, ¶ 20. As we explained in *Hartman*, the problem with other-acts evidence is rarely that it is irrelevant; often, it is too relevant. *Hartman* at ¶ 25; *see* 1A Wigmore, *Evidence*, Section 58.2, at 1212 (Tillers Rev.1983). In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute. *Hartman* at ¶ 26-27; *see also Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

Thus, courts should begin by evaluating whether the evidence is relevant to a non-character-based issue that is material to the case. If the evidence is not premised on improper character inferences and is probative of an issue in the case, the court must then consider whether the evidence's value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A); *Hartman* at ¶ 29. Because other-acts evidence " 'almost always carries some risk that the jury will draw the forbidden propensity inference,' " courts should be vigilant in balancing the prejudicial impact of the evidence against its probative value. *Id.* at ¶ 33, quoting *United States v. Gomez*, 763 F.3d 845, 857 (7th Cir.2014) (en banc).

*Id.* at ¶ 36-38.[3]

{¶ 34} Here, the rape offenses charged in the two indictments are specific-intent crimes. *See Hartman* at ¶ 55. Appellant's initial defense at trial was that the evidence did not establish, beyond a reasonable doubt, that he ever engaged in sexual conduct with either victim. Appellant claimed alternatively, even if the evidence showed that he engaged in sexual conduct with one or both of the victims, the sexual conduct was consensual. When a defendant is charged with a specific-intent crime, such as rape, the specific intent becomes a material issue in the case. *Id.* Because appellant defended against the charges involving the two victims on the grounds that the encounters had been consensual, he placed his intent at issue. *Id. See also State v. Gardner*, 59 Ohio St.2d 14, 20-21 (1979). Thus, the testimony of the two victims would arguably be admissible if the indictments were tried

---

[3] In *Smith*, the court also determined that there is no guarantee, either by constitution or by statute, that evidence of other crimes of which the accused was acquitted may not be offered to prove a distinct but related offense. *Id.*, 2020-Ohio-4441, at ¶ 38-39.

separately provided the other-acts testimony was offered to prove appellant's intent to commit forcible rape. *Schaim*, 65 Ohio St.3d at 58.

{¶ 35} "To determine whether other-acts evidence is genuinely probative of the intent of the accused to commit the charged crime, rather than merely the accused's propensity to commit similar crimes, the question is whether, '*under the circumstances*, *the detailed facts* of the charged and uncharged offenses strongly suggest that an innocent explanation is implausible.' " (Emphasis sic.) *Hartman* at ¶ 58, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 7.5.2 (2d Ed.2019). "Or to put it another way, the other-acts evidence 'must be so related to the crime charged in time or circumstances that evidence of the other acts is significantly useful in showing the defendant's intent in connection with the crime charged.' " *Hartman* at ¶ 58, quoting 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019). *See also Gardner* at 21 (In prosecution of defendant for felonious assault, kidnapping, and forcible rape, evidence of the prior sexual assaults was "so closely related in nature, time and place to the offense charged" as to be probative of intent.). In *Gardner*, the court clarified that for other acts evidence to be probative of intent, it " 'must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question.' " *Gardner* at 20, quoting *State v. Burson*, 38 Ohio St.2d 157, 159 (1974). *See also Hartman*, 2020-Ohio-4440, at ¶ 61

{¶ 36} Here, the evidence showed the two rapes occurred in or about April 2018, both victims were drug-addicted prostitutes, appellant picked up both victims in his navy blue Ford Explorer in the Linden area of Columbus, both victims entered appellant's vehicle voluntarily under the assumption that appellant would be paying for sexual favors, appellant took both victims to his rented home on Duxberry Avenue where the rapes took place, and he used physical force to rape the victims when they withdrew consent. Additional similarities include the victims' testimonies that appellant placed a board against the front door after they entered the residence, the home was in deplorable condition, dogs were heard barking outside the residence, and the rapes occurred in an upstairs bedroom containing a small television set and little in the way of furniture.

{¶ 37}  In our view, the sexual assaults on each of the two victims were so similar as to the time, place, and manner of commission that the evidence offered to prove the forcible rape and kidnapping charges in one indictment disclosed purposeful action on the part of appellant to commit forcible rape and kidnapping in the other.  *See State v. Morrison*, 10th Dist. No. 91AP-90 (Nov. 19, 1991) (in a case against defendant accused of raping prostitutes, this court, following *Gardner*, upheld the admission of testimony concerning a prior assault by defendant of another known prostitute when offered to show defendant intended to forcibly rape the victim "whether or not [the victim] initially consented to accompany defendant for the purpose of performing sex for money"); *compare Hartman* at ¶ 62 (evidence that the accused molested his stepdaughter is not probative when offered to prove defendant's intent to rape the victim because the two victims are "not in the same class of victims: one is an adult acquaintance, the other was a child relative").  Because the proffered evidence in support of the rape and kidnapping convictions in case No. 19CR-0880 would be admissible, under Evid.R. 404(B), when offered to prove appellant's intent to engage in non-consensual sex with the victim in case No. 18CR-4943, the trial court did not abuse its discretion when it joined the two indictments for trial over appellant's objection.  *Schaim*, 65 Ohio St.3d at 58; *Gardner*, 59 Ohio St.2d at 21.

### 2.  Simple and Distinct Evidence Test

{¶ 38}  As previously noted, because the other-acts evidence test for joinder and the simple and distinct evidence test are disjunctive, the satisfaction of one negates an accused's claim of prejudice without consideration of the other.  *Truss*, 2019-Ohio-3579, at ¶ 17; *Gravely*, 2010-Ohio-3379, at ¶ 38; *Cameron*, 2009-Ohio-6479, at ¶ 35.  Nevertheless, in *Hartman*, the Supreme Court issued the following advice to trial courts regarding the admission of other-acts evidence:

> Because other-acts evidence "almost always carries some risk that the jury will draw the forbidden propensity inference," *Gomez* at 857, it will often present the dangers that Evid.R. 403(A) seeks to protect against.  Thus, when such evidence is only slightly probative of a nonpropensity theory but has a high likelihood of unfairly prejudicing the defendant or confusing or misleading the jury, the evidence must be excluded.
>
> * * *
>
> When a court determines that other-acts evidence should be admitted, it must take steps to minimize the danger of unfair

prejudice inherent in the use of such evidence and to ensure that the evidence is considered only for a proper purpose. Thus, a court should explain both the specific purpose for which the evidence may be considered and the rationale for its admission on the record. Doing so will ensure that trial participants—as well as reviewing courts—are aware of the permitted use of the other-acts evidence. Further, as we explain in more detail below, an appropriate jury instruction geared toward the specific purpose for which the evidence has been admitted will help reduce the risk of confusion and unfair prejudice.

*Id.* at ¶ 33-34.

{¶ 39} In light of the recent opinions of the Supreme Court in *Smith* and *Hartman*, and because the trial court was never asked to provide, and did not provide, the jury with an instruction regarding the purpose for which the jury could consider the testimony of one victim in determining appellant's guilt of the charges involving the other victim, we shall also review the propriety of joinder under the simple and distinct evidence test. Under the simple and distinct evidence test, even if Evid.R. 404(B) would have precluded the testimony of both victims if the two indictments had been tried separately, the defendant cannot show prejudice arising from joinder of the indictments if the evidence relevant to the charges in each case is simple and distinct. *Armengau*, 2017-Ohio-4452, at ¶ 99; *Schaim* at 58.

{¶ 40} Though we have acknowledged in our Evid.R. 404(B) analysis that the offenses charged in the two indictments are remarkably similar as to time, place, and manner of commission, we find that the jury would have had little trouble separating the evidence relevant to the charges in one indictment from the evidence relevant to the charges in the other. The primary witness, and the only eyewitness to the crimes charged in case No. 18CR-4943 is victim E.W. The primary witness and the only eyewitness to the crimes charged in case No. 19CR-0880 is victim A.D. As will be discussed in connection with appellant's third and fourth assignments of error, appellee relied almost exclusively on the testimony of the respective victims to prove the charges in the separate indictments. Though the additional evidence presented by appellee may have provided corroboration of certain facts, it was the testimony of the two victims that provided the critical facts supporting each of the separate indictments. Because the critical evidence supporting the convictions was the testimony of the respective victims, we find that it would be a simple

matter for the jury to distinguish between the evidence relevant to case No. 19CR-0880 and the evidence relevant to case No. 18CR-4943.

{¶ 41} Based on the foregoing, we find the evidence offered by appellee to prove the charges in the two indictments was simple and distinct, and there was little chance of jury confusion.

{¶ 42} Appellant maintains that the opinion of the Supreme Court in *Schaim* supports his claim that the trial court erred when it granted appellee's motion for joinder. We disagree.

{¶ 43} The single indictment in *Schaim* included 5 different counts that alleged 3 different offenses committed against 3 different victims. Counts 1 and 2 charged the defendant with the forcible rape of his 20-year-old adopted daughter on 2 different occasions, Counts 3 and 4 charged the defendant with sexual imposition on an adult employee, and Count 5 charged the defendant with gross sexual imposition on his daughter, a child under 13 years of age. The trial court denied defendant's motion to sever the counts into 3 different trials. Following a jury trial on all charges, defendant was convicted of the forcible rapes of his adult daughter and gross sexual imposition on his minor daughter. The defendant was acquitted of the sexual imposition charges involving the employee. The First District Court of Appeals reversed the convictions of forcible rape but affirmed the conviction of gross sexual imposition. Defendant appealed his conviction of gross sexual imposition, and the state cross-appealed as to the reversal of the rape convictions.

{¶ 44} Applying the other-acts test, the Supreme Court ruled that defendant was prejudiced by the joinder because the testimony of defendant's employee would not have been admissible when offered to prove defendant committed any offenses against his daughters. *Id.* at 60. The court also found the opposite to be true in that the testimony of defendant's two daughters would not have been admissible when offered to prove the charge of sexual imposition involving his employee. *Id.* at 60-61. The *Schaim* court did, however, conclude that testimony from the older daughter that her father's backrubs were a pretext for sexual fondling was admissible when offered to rebut defendant's claim that he had not touched his younger daughter for the purpose of sexual gratification. *Id.* The Supreme Court concluded that "[i]f the charges were severed for trial based on the different victims, the trial on the charge of gross sexual imposition involving [the minor daughter]

would be the only trial where evidence of the defendant's sexual activity with [his adopted daughter] would be admissible."  *Id.*, 65 Ohio St.3d at 61.

{¶ 45} Applying the simple and distinct test, the *Schaim* court concluded that joinder was improper because "the record reflected confusion as to which of the crimes was being referred to," it "allowed the state to circumvent the prohibition on other acts testimony," and the other-acts evidence involving the minor victim was both "inflammatory" and "at best thin."  *Id.* at 62, 63.

{¶ 46} Contrary to appellant's assertion, our ruling in this case is consistent.  *Id.* Here, the charges in the two indictments involve crimes against the same class of victim, as was the case with the charges involving defendant's daughters in *Schaim*.  In *Schaim*, evidence that defendant obtained sexual gratification by engaging in sexual activity with the adopted daughter was relevant when offered to prove defendant's motive for engaging in sexual activity with the other daughter.  Such evidence was not relevant, however, when offered to prove defendant's motive as to the employee victim because defendant's motive was not at issue.  Here, appellant's intent to engage in sexual activity with one victim, an admitted prostitute who had withdrawn consent, was relevant when offered to rebut appellant's defense of consent and to prove appellant's intent to rape the other victim, who was also an admitted prostitute who initially consented to sexual activity.  *Morrison*, 10th Dist. No. 91AP-90; *Hartman*, 2020-Ohio-4440, at ¶ 62.  Unlike the other-acts evidence involving the employee victim in *Schaim*, the evidence in case No. 19CR-0880 would be admissible, under Evid.R. 404(B), when offered to prove appellant's intent to commit rape and kidnapping in case No. 18CR-4943.  The opposite is also true.

{¶ 47} The *Schaim* court also found joinder improper under the simple and distinct test because the evidence supporting the charges involving the minor victim was "at best thin," the state was allowed "to circumvent the prohibition on other acts testimony," and the "record reflected confusion as to which of the crimes was being referred to."  *Id.* at 62, 63.  The court cited the sheer volume of evidence admitted in support of the charges and the inflammatory nature of the evidence as factors contributing to the confusion.  *Id.*

{¶ 48} Here, unlike the evidence to support the charges against defendant in *Schaim*, the evidence to support the rape and kidnapping charges against the two victims in this case is both simple and distinct.  Because appellant's guilt of the charges in the two

indictments rested largely on the credibility of the two victims, the jury should not have had a great deal of difficulty in segregating the evidence relevant to each case.  Moreover, as will be discussed in connection with appellant's third assignment of error, there is substantial evidence of appellant's guilt as to all charges and, unlike the *Schaim* case, the record reveals no confusion as to which charges the evidence was offered to prove.[4]

{¶ 49} We also find no merit in appellant's contention that the joinder of the two indictments unfairly prejudiced his defense because it permitted the jury to consider the testimony of one victim in determining the credibility of the other victim.  The trial court instructed the jury as follows:

> You are the sole judges of the facts, the credibility of witnesses, and the weight of the evidence.
>
> To weigh the evidence, you must consider the credibility of witnesses.  You will apply the tests of truthfulness which you apply in your daily lives.
>
> These tests include: the appearance of each witness upon the stand; the witness' manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear, and know the things concerning the testimony; the accuracy of the witness' memory; frankness or lack of it; intelligence, interest, and bias, if any; together with all the facts and circumstances surrounding the testimony.
>
> *Applying these tests, you will assign to the testimony of each witness such weight as you deem proper.*
>
> You are not required to believe the testimony of any witness simply because he or she was under oath.  *You may believe or disbelieve all or any part of the testimony of any witness.  It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.*

(Emphasis added.)  (Tr. Vol. III at 345.)

{¶ 50} The jury was properly instructed to determine the credibility of "each witness" based on a generally accepted test for truthfulness.  (Tr. Vol. III at 345.)  As an appellate court, we presume the jury followed the trial court's instruction and applied the proper standard in assessing a witness's credibility.  *State v. Proby*, 10th Dist. No. 14AP-

---

[4] The *Schaim* court noted that even the First District Court of Appeals had been confused as to the evidence relevant to the charges involving defendant's two daughters.  *Id.* at 62.

1067, 2015-Ohio-3364, ¶ 49, citing *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 147.

{¶ 51} For the foregoing reasons, we hold that the trial court did not abuse its discretion when it joined the two indictments for trial over appellant's objection. Appellant's first assignment of error is overruled.

### B.  Second Assignment of Error

{¶ 52} Appellant's second assignment of error, as written, is both limited to counsel's performance regarding the joinder of the two indictments for trial and conditioned on our application of the plain-error standard of review with respect to joinder. Because we applied the abuse of discretion standard in our review of appellant's first assignment of error, appellant's second assignment of error is rendered moot.  App.R. 12(A)(1)(c).

{¶ 53} Furthermore, because appellant's second assignment of error is limited to counsel's performance regarding joinder, appellant's argument that trial counsel failed to perform competently in other respects is not properly before this court.  "Pursuant to App.R. 12(A)(1)(c), courts of appeal decide appeals on assignments of error, not arguments or issues contained in a brief."  *Wood v. Simmers*, 10th Dist. No. 17AP-269, 2017-Ohio-8718, ¶ 7, citing *Hamilton v. Hamilton*, 10th Dist. No. 14AP-1061, 2016-Ohio-5900, ¶ 9, citing *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5.  *See also Bonn v. Bo*nn, 10th Dist. No. 14AP-967, 2015-Ohio-3642, ¶ 15.

{¶ 54} Accordingly, appellant's second assignment of error is moot.

### C.  Third Assignment of Error

{¶ 55} In appellant's third assignment of error, appellant claims the convictions, particularly the conviction of the vaginal rape of E.W., were not supported by "substantial weight of the evidence."  (Appellant's Brief at 4.)  This court has treated claims that a conviction is not supported by substantial evidence as a challenge to the sufficiency of the evidence.  *Columbus v. Clark*, 10th Dist. No. 14AP-719, 2015-Ohio-2046, ¶ 32; *State v. Wheat*, 10th Dist. No. 05AP-30, 2005-Ohio-6958, ¶ 14; *Columbus v. Reynolds*, 10th Dist. No. 78AP-843 (June 28, 1979).

{¶ 56} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict."  *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-

Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "Whether the evidence is legally sufficient to support a verdict is a question of law, not fact."  *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 24, citing *Kurtz* at ¶ 15, citing *Thompkins* at 386.  "In determining whether the evidence is legally sufficient to support a conviction, ' "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' "  *Cervantes* at ¶ 24, quoting *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 57} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80.  "The court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime." *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.  " 'Further, "the testimony of one witness, if believed by the jury, is enough to support a conviction." ' "  *Davis* at ¶ 38, quoting *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 58} Felonious assault, as defined in R.C. 2903.11(A)(1), occurs when a "person * * * knowingly * * * [c]ause[s] serious physical harm to another."  Serious physical harm includes "any physical harm that involves acute pain of such duration as to result in substantial suffering."  R.C. 2901.01(A)(5)(e).

{¶ 59} R.C. 2907.02 provides "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. * * * Whoever violates this section is guilty of rape, a felony of the first degree."  R.C. 2907.02(A)(2) and(B).  " 'Sexual activity' means sexual conduct or sexual contact, or both."  R.C. 2907.01(C).  Pursuant to R.C. 2907.01(A), "[s]exual conduct" is defined in relevant part as "vaginal intercourse between a male and female; * * * fellatio, and cunnilingus between persons regardless of sex. * * * Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶ 60} R.C. 2905.01 provides in relevant part "[n]o person, by force * * * shall * * * restrain the liberty of the [victim] * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." R.C. 2905.01(A)(4). "Whoever violates R.C. 2905.01 is guilty of kidnapping." R.C. 2905.01(C)(1).

{¶ 61} Here, the testimony of the two victims, if believed, provided the jury with sufficient evidence to satisfy the elements of the charged offenses beyond a reasonable doubt. With regard to the finding of guilt as to the felonious assault on E.W., she testified that when she asked appellant for money in return for sex, he placed his hands around her neck and began choking her until she lost consciousness. Ohio courts have consistently held that being choked to the point of unconsciousness constitutes serious physical harm because it causes the victim to be in a state of temporary, substantial incapacity. *State v. Redwine*, 12th Dist. No. CA2006-08-011, 2007-Ohio-6413, ¶ 32; *State v. Conant*, 4th Dist. No. 20CA1108, 2020-Ohio-4319; *State v. Czajka*, 101 Ohio App.3d 564, 574 (8th Dist.1995); *State v. Mushrush*, 135 Ohio App.3d 99, 108 (1st Dist.1999). Accordingly, E.W.'s testimony provided the jury with sufficient evidence to find appellant guilty of felonious assault beyond a reasonable doubt.

{¶ 62} With regard to the guilty verdicts on the rape charges, both victims testified they did not consent to any sexual activity with appellant after he refused to pay them. They further testified appellant compelled them to engage in sexual conduct by use of force when they refused to engage in such conduct without payment. E.W. testified appellant forced her to engage in sexual conduct including fellatio, vaginal sex, and cunnilingus. A.D. testified appellant forced her to engage in sexual conduct in the form of fellatio and vaginal intercourse.

{¶ 63} We also disagree with appellant's claim that E.W. failed to testify that appellant's penis or any other object penetrated her vagina, as is required for a conviction of rape. As noted above, E.W.'s testimony included the following account:

> Q. Okay. Now, when you say he raped you, I don't want to belabor the point, but where was his penis in relation to your body?
>
> A. Everywhere. In my mouth. Everywhere but anal.
>
> Q. Okay.

A.  Like he vaginally raped me.  He had sat on top of me at one point so I could give him oral sex.  It lasted for hours.

(Tr. Vol. II at 174.)

{¶ 64} The trial court instructed the jury in relevant part as follows:

Before you can find the defendant guilty of rape, you must find beyond a reasonable doubt that on or about the 5th day of April, 2018, in Franklin County, Ohio, the defendant engaged in sexual conduct, to wit: vaginal intercourse, with [E.W.] and the defendant purposely compelled [E.W.] to submit by force or threat of force.

(Tr. Vol. III at 351-52.)

Sexual conduct means vaginal intercourse between a male and female; anal intercourse; fellatio; and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another.

Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(Tr. Vol. III at 351.)

{¶ 65} Contrary to appellant's claims, the trial court's instruction to the jury tracks the statutory language with respect to the offense of rape and the definition of sexual conduct for purposes of that offense.  Though appellant's trial counsel interposed objections to other proposed jury instructions in this case, counsel did not object to the jury instruction defining sexual conduct and did not ask for a more detailed instruction regarding penetration for purposes of a rape offense.  In our view, E.W.'s testimony provided sufficient evidence to satisfy the elements of a rape offense, including vaginal penetration.

{¶ 66} The evidence also supports the separate guilty verdicts for kidnapping as both victims testified that appellant prevented them from leaving his bedroom in order to engage in sexual activity.  The testimony of both victims provided the jury with evidence that appellant used physical force to prevent them from leaving the bedroom, refused their pleas to be released, threatened them with physical harm if they attempted to flee, and continued to restrain their movements for several hours as he repeatedly engaged in various forms of sexual conduct with the victims.  In E.W.'s case, the evidence supports a finding that appellant transported her from downstairs to the upstairs bedroom while she was

unconscious. Thus, the testimony of the victims was sufficient to sustain the separate guilty verdicts for kidnapping beyond a reasonable doubt.

{¶ 67} Based on the foregoing, we hold the record contains sufficient evidence to support the guilty verdicts beyond a reasonable doubt. Appellant's third assignment of error is overruled.

### D. Fourth Assignment of error

{¶ 68} In appellant's fourth assignment of error, appellant contends the convictions were against the manifest weight of the evidence. We disagree.

{¶ 69} In considering a claim that a jury verdict is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Guice*, 10th Dist. No. 18AP-305, 2019-Ohio-1324, ¶ 23, quoting *State v. Williams*, 10th Dist. No. 10AP-779, 2011-Ohio-4760, ¶ 20, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "Further, '[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Williams* at ¶ 20, quoting *Martin* at 175.

{¶ 70} " 'Unlike the standard of review for sufficiency of the evidence, "a reviewing court does not construe the evidence most strongly in favor of the prosecution when using a manifest-weight standard of review." ' " *Guice* at ¶ 24, quoting *Williams* at ¶ 21, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, ¶ 81 (2d Dist.). " 'A manifest weight of the evidence challenge "questions the believability of the evidence and asks a reviewing court to determine which of the competing inferences is more believable." ' " *Guice* at ¶ 24, quoting *Williams* at ¶ 21, quoting *Woullard* at ¶ 81. " 'However, an appellate court "may not substitute its judgment for that of the trier of fact on the issue of the credibility of the witnesses unless it is patently apparent that the factfinder lost its way." ' " *Guice* at ¶ 24, quoting *Williams* at ¶ 21, quoting *Woullard* at ¶ 81.

{¶ 71} As earlier stated, the testimony of the two victims, if believed, provided the jury with sufficient evidence to satisfy the elements of the offenses beyond a reasonable doubt. Appellant argues, however, that the testimony of the two victims was unworthy of

belief and, in the absence of corroborating physical evidence, this court should exercise its discretionary power to grant a new trial. We disagree.

{¶ 72} With regard to the guilty verdict on the felonious assault charge involving E.W., appellant's trial counsel acknowledged in his closing argument that choking E.W. to the point of unconsciousness would constitute serious physical harm. Appellant maintains, however, that in the absence of any observable injury to her neck, the jury was required to disregard E.W.'s testimony. Rice testified, however, that E.W. refused the head-to-toe physical examination. Consequently, the absence of any evidence of bruises or marks on E.W.'s neck did not preclude the jury from crediting her testimony about being choked to the point of unconsciousness. E.W. testified as follows:

> Q. Okay. You said he started getting violent at that point?
>
> A. Yes.
>
> Q. Were you still downstairs?
>
> A. Yes.
>
> Q. Did you walk up the stairs at any point?
>
> A. *No. I passed out because I was trying to kick him off, and that made him mad. And he was, like, yelling at me, like, "I'm going to choke you. I'm going to choke you." And I woke up upstairs. Well, at the time, I didn't know I was upstairs. I just knew I was in a bedroom --*

(Emphasis added) (Tr. Vol. II at 172.)

{¶ 73} In our view, E.W.'s testimony about being choked to unconsciousness was sufficiently compelling to convince the jury that she suffered serious physical harm at the hands of appellant, even in the absence of evidence of an observable physical injury to her neck.

{¶ 74} Appellant makes a similar argument with respect to the rape convictions involving victim E.W. Appellant claims that in the absence of any evidence that E.W. sustained an observable external or internal physical injury to her vaginal area, the weight of the evidence does not support the guilty verdict on the charge of vaginal rape. Rice estimated, however, that only 20 percent of rape victims sustain a physical injury. Consequently, the lack of an observable external or internal physical injury to E.W.'s vaginal area did not rule out a forceable rape conviction, provided the jury believed E.W.'s testimony.

{¶ 75} Similarly, the lack of DNA evidence linking appellant to the rape of E.W. did not foreclose a guilty verdict if the jury found E.W.'s testimony to be truthful. E.W. testified that she had sexual intercourse with another john after the rape and before she presented to the hospital for examination. Though appellant was excluded as a major contributor of the genetic material from the vaginal swab, forensic scientist Simon testified that appellant could not be excluded as a minor contributor to the mixture of DNA on the vaginal swab because it was uninterpretable. She also testified that if the victim of a vaginal rape engaged in consensual vaginal intercourse around the time of the rape, it would "make sense" that someone other than the suspect would be a major contributor of the recovered DNA. (Tr. Vol. III at 286-87.)

{¶ 76} The remainder of appellant's manifest-weight argument focuses on the credibility of the two victims. Appellant contends the victims' testimonies was not believable because they were engaged in illegal prostitution at the time of the crimes and admitted they were under the influence of illegal drugs. In response, appellee cites E.W.'s testimony that she was "not high" at the time appellant committed the crimes against her. (Tr. Vol. II at 183.) Furthermore, the jury was made aware of the relevant circumstances affecting the credibility of the two victims on cross-examination. The jury was frequently reminded of these circumstances during closing argument. The jury was also instructed by the trial court as to their obligation to determine the credibility of each witness and their prerogative to believe or disbelieve all or any part of each witness's testimony. The trial court also instructed the jury as to the test for truthfulness they should apply in making their assessment of witness credibility.

{¶ 77} Appellee points to testimony corroborating certain details in the victims' accounts. For example, Robert Pitts testified that he is the owner of the property on Duxberry Avenue where the rapes took place, and he recognized appellant at trial. Pitts had leased the property to appellant for seven years before evicting him for nonpayment of rent approximately one year prior to trial. Pitts confirmed State's Exhibits D-1 and D-2 depict a front and aerial view of the home. Pitts testified appellant owned a blue "SUV" and two pit bull dogs. (Tr. Vol. III at 261.) He corroborated the victims' testimonies about the deplorable condition of the home, inside and out; some of which would only be known to someone who had recently been to the home. And, the narrative statement E.W. gave to

Rice, which Rice read into the record, contained the same details and sequence of events as E.W.'s trial testimony. Furthermore, the jury was also instructed: "Testimony has been admitted indicating that the defendant may have fled the jurisdiction. You're instructed that flight alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness or awareness of guilt." (Tr. Vol. III at 348.) On this record, the jury could have found appellant fled to the state of Washington because he had committed crimes against the victims in Ohio.

{¶ 78} As we have noted, this court does not construe the evidence most strongly in favor of the prosecution when conducting a manifest-weight analysis. *Guice*, 2019-Ohio-1324, at ¶ 24; *Williams*, 2011-Ohio-4760, at ¶ 21. Rather, when faced with a manifest weight of the evidence challenge, we must question the believability of the evidence and determine which of the competing inferences is more believable. *Guice* at ¶ 24; *Williams* at ¶ 21; *Woullard*, 2004-Ohio-3395, at ¶ 81. In making that determination, we may not substitute our judgment for that of the trier of fact on the issue of the credibility of the witnesses unless it is patently apparent that the factfinder " ' "lost its way." ' " *Guice* at ¶ 24, quoting *Williams* at ¶ 21, quoting *Woullard* at ¶ 81.

{¶ 79} It is not apparent, on this record, the jury lost its way in making the required credibility determinations and resolving competing inferences. Accordingly, we hold the weight of the evidence supports the guilty verdicts reached by the jury, and the convictions were not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.

## IV. CONCLUSION

{¶ 80} Having overruled appellant's first, third, and fourth assignments of error and having rendered appellant's second assignment of error moot, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____